**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
 CLAUDE LEWIS,

                    **Plaintiff,**                              **Civ. No.: 14-CV-2302 (TPG)**

                                                            **PROPOSED**
                                                            <u>**REQUESTS TO CHARGE**</u>


**AMERICAN SUGARS HOLDING, INC.,**
**and MEHANDRA RAMPHAL,**

                    **Defendants.**

-----------------------------------------------------------x

        Pursuant to the Court's Individual Rules and Practices in Civil Cases and Rule 51 of the

Federal Rules of Civil Procedure, Plaintiff submits the following proposed requests to charge the

jury:

Dated: New York, New York                     NESENOFF & MILTENBERG, LLP
         November 7, 2017                      *Attorneys for Plaintiff*

                                               <u>/s/ Megan Goddard</u>
                                               Megan S. Goddard, Esq.
                                               Gabrielle M. Vinci, Esq.
                                               363 Seventh Avenue, 5th Floor
                                               New York, New York 10001
                                               Tel: (212) 736-4500

                                               CHARNY & WHEELER
                                               *Attorneys for Plaintiff*

                                               <u>/s/ Nathaniel K. Charny</u>
                                               Charny & Wheeler
                                               9 West Market Street
                                               Rhinebeck, New York 12572
                                               Tel: (845) 876-7500

## I.    GENERAL INSTRUCTIONS

### REQUEST NO. 1
### DIRECT V. CIRCUMSTANTIAL EVIDENCE

It is important to keep in mind that the plaintiff need not present *any* direct evidence to prevail on his claims. Direct evidence of discrimination is hard to find. This is because an employer who discriminates is unlikely to leave a "smoking gun", which would evidence a discriminatory motive. Therefore, a plaintiff is seldom able to prove his claim by direct evidence, and usually relies solely on circumstantial evidence.[1]

---

[1] Desert Palace, Inc. v. Costa, *539* U.S. 90, 100·101 (2003}; Chambers v. TRM Copy Centers Comoration, 43 F.3d 29,37 (2d Cir. 1994), Distery, Continental Group, 859 F.2d 1108, 1114-15 (2d Cir. 1988).

**REQUEST NO. 2**
**<u>BURDEN OF PROOF</u>**

To establish a claim by a fair preponderance of the credible evidence simply means to prove that something is· more likely so than not so.  A preponderance of the evidence means the greater weight of the evidence. It does not mean the greater number of witnesses; or the greater length of time taken by either side. It means the quality and persuasiveness of the evidence-- that is, the weight and the effect that the evidence has in your minds.

In order for a party who bears the burden of proof as to a particular issue or claim to prevail, the law requires that the evidence supporting the party's claim must appeal to you as more accurately representing what actually took place, as compared to the evidence opposed to the party's claim.  If it does not, or if it weighs so evenly that you are unable to say that there is a preponderance on either side, then you must resolve the question in favor of the other party. That is because the party bearing this burden must prove more than simple equality of evidence. He/she must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden need prove no more than a preponderance.  So long as the scales tip, however slightly, in favor of the party with this burden of proof - that what the party claims is more likely true than not true - than that clement will have been proved by a preponderance of the evidence.

To summarize briefly, a preponderance of the evidence means that such evidence, when considered and compared with the evidence opposed to it, produces in your mind a belief that what is sought to be proved more likely happened than not happened.

## REQUEST NO. 3
## <u>CREDIBILITY OF WITNESSES</u>

You have had the opportunity to observe the witnesses or to hear their deposition testimony. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of witness testimony.

How do you determine where the truth lies? You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.

You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, his or her candor or lack of candor, his or her intelligence, the reasonableness and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other believable testimony. You watched the witnesses testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness appear? What was the witness's demeanor while testifying? Often it is not what people say but how they say it that moves us.

In deciding whether to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether in such a situation the witness's testimony reflects an innocent lapse of memory or an intentional falsehood. and that may depend on whether it has to do with an important fact or with only a small detail.

If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter), the law permits you to disregard completely the entire testimony of that

witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.

As the sole judges of the facts, you must decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it. In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

## REQUEST NO. 4
## <u>WHAT IS AND IS NOT EVIDENCE</u>

The evidence from which you are to decide what the facts are consists of:

1.  The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;

2.  The documents and exhibits which may have been received into evidence; and

3.  Stipulations of fact or testimony. A "stipulation" is an agreement between both sides that certain facts are true. When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

Nothing else is evidence; not what the lawyers say, not what I say, not anything you may have heard outside the courtroom.

## REQUEST NO. 5
## <u>CORPORATE PARTIES</u>

In this case, one of the defendants is a corporation. The mere fact that one of the parties is a corporation does not mean that it is entitled to any lesser consideration by you. All litigants are equal before the law, and governmental entities, big or small, are entitled to the same fair consideration you would give any other individual party.[2]

---

[2] <u>Source</u>: 4 Sand, *et al.*, <u>Modern Federal Jury Instructions</u>, Instruction 76-2.

**REQUEST NO. 6**
**<u>INTEREST IN OUTCOME</u>**[3]

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Keep in mind that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

---

[3] 4-76 Modern Fed. Jury Instructions-Civil P. 76.01 (Instruction 72-1).

## II.    PLAINTIFF'S RACIAL DISCRIMINATION CLAIMS

### REQUEST NO. 7
### THE COURT SHOULD NOT INCLUDE THE *MCDONNELL DOUGLAS* BURDEN SHIFTING FRAMEWORK IN ITS CHARGE TO THE JURY

The Second Circuit has "cautioned that trial judges should not import uncritically language used in the traditional ... *McDonnell Douglas* formulation into jury charges because such language, developed by appellate courts for use by judges, is at best irrelevant, and at worst misleading to a jury."[4]

The court further held:

> In an employment discrimination or retaliation case, the job of the jury is simply to decide whether an impermissible factor was a motivating factor in the adverse employment action. The jury therefore does not need to be lectured on the concepts that guide a judge in determining whether a case should go to the jury. In this case, these concepts included discussions of burden shifting and pretext, issues that were simply not the province of the jury....

Therefore, when the district court included these concepts as part of its jury charge by using the *McDonnell Douglas* framework, it created a distinct risk of confusing the jury. It could easily have led the jury astray from its role, merely to decide whether an impermissible factor was a motivating factor in the adverse employment action in question.[5]

Accordingly, the Court should not include any discussions of burden-shifting in its charge to the jury, and the word "pretext" should not be used at all throughout the jury charges.[6]

---

[4] *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000)(*quoting Renz Grey Advertising, Inc.*, 135 F.3d 217, 223 (2d Cir. 1997)) (internal quotation and citations omitted); *see Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d 134, 153-155 (2d Cir. 2010).
[5] *Id.* at 118
[6] *See Henry v. Wyeth Pharmaceuticals, Inc.*, 616 F.3d at 153-55.

**REQUEST NO. 8**
**INTRODUCTION TO PLAINTIFF'S RACE AND NATIONAL ORIGIN**
**DISCRIMINATION CLAIMS**

Plaintiff brings his claims of race discrimination against the Defendants pursuant to Title VII of the Civil Rights of 1964 (42 U.S.C. § 2000e-2(a)) and the New York State Human Rights Law (N.Y. Exec. Law § 290 et. seq.).

The term "discrimination" can mean many things under the law. In this case, Mr. Lewis claims that the Defendants discriminated against him by (i) treating him less well than his similarly situated Caucasian and Guyanese co-workers, (ii) subjecting him to a hostile working environment on the basis of his race and/or national origin, and (iii) deliberately depriving him of overtime opportunities on the basis of his race and/or national origin.

Plaintiff may seek relief for race and/or national origin discrimination under two theories: (1) disparate treatment and (2) hostile work environment.[7] I will now instruct you on the elements of both theories. Keep in mind that you may find that Plaintiff has proven his case by a preponderance of the elements under either or both theories.

---

[7] *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)

**REQUEST NO. 9**
**ELEMENTS OF PLAINTIFF'S DISPARATE TREATMENT RACE AND NATIONAL ORIGIN DISCRIMINATION CLAIMS**

In order to prevail on his claims of disparate treatment race and/or national origin discrimination under Title VII and the State Human Rights Law, Plaintiff must prove by a preponderance of the evidence that:

1.  First, he was subject to an adverse employment action; and

2.  Second, that Plaintiff's race and/or national origin was a motivating factor in Defendants' decision.

In order to satisfy the adverse employment action element, the plaintiff's burden has frequently been described as minimal.[8] The plaintiff suffers an adverse employment action when the "terms and conditions" of the individual's employment are altered for the worse.[9] Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.[10]

Employment decisions that affect work assignments are adverse employment actions. Indeed, an adverse employment action need not have any monetary consequence but can also include diminished responsibilities or "other indices that might be unique to a particular situation."[11]

The final element that must be satisfied is a showing that Plaintiff's race and/or national

---

[8] *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995).
[9] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000).
[10] *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).
[11] *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (*quoting crady v. liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (C.A.7 1993)

origin was a motivating factor in the adverse employment action(s).[12] In determining whether Mr. Lewis' race and/or national origin was a motivating factor, it is important for you to understand that although Plaintiff's race and/or national origin must have played a role in the employer's decision, his race and/or national origin need not have been the sole or exclusive factor motivating the employer's decision. There may have been many factors motivating a decision. Plaintiff's status in a protected class may be one of many factors.[13]

You, the jury, can consider a number of circumstances that may give rise to an inference of discriminatory motive. In determining whether Plaintiff's race and/or national origin was a motivating factor in the employment decision, some factors you may consider are the following: (1) whether you believe, or disbelieve Defendants' justifications for taking the adverse actions; (2) whether similarly situated employees were treated differently; (3) the timing and sequence of events leading to the adverse employment action; (4) whether decision makers made statements reflecting discriminatory animus; (5) whether a group of employees who were not in plaintiffs protected class were  treated more favorably than  plaintiff; or (6) whether plaintiff was treated less favorably than a group of people who were not in his protected class. These are merely factors, among many, that you may consider in determining whether Plaintiff's race and/or national origin was, in part, a motivating factor which lead to the adverse employment action.

If you find that that the preponderance of the evidence shows that Plaintiff's race and/or national origin was a motivating factor in the adverse employment actions, you must find for Plaintiff with respect to his disparate treatment race and/or national origin discrimination claim under Title VII and the State Human Rights Law. If you find that the preponderance of the evidence

---

[12] *Gilligan*, 234 F.3d at 1261 (2d Cir. 2000).
[13] O*wen v. Termatool Corp*, 155 F.3d 137, 139 (2d Cir. 1998)

does not show that Plaintiff's race and/or national origin was a motivating factor in the adverse employment actions, you must find for Defendants with respect to Plaintiff's disparate treatment race and/or national origin discrimination claim under Title VII and the State Human Rights Law.

**REQUEST NO. 10**
**ELEMENTS OF PLAINTIFF'S HOSTILE WORK ENVIRONMENT RACE AND**
**NATIONAL ORIGIN DISCRIMINATION CLAIMS**

In the instant case, Plaintiff asserts that he was subject to a race and national origin discrimination in that he was forced to work in a hostile work environment.

In order to prevail on his claims of hostile work environment race and/or national origin discrimination under Title VII and the State Human Rights Law, Plaintiff must prove by a preponderance of the evidence that:

1.    He was subjected to unwelcome harassment that was objectively and subjectively severe or pervasive;

2.    Such harassment was motivated, at least in part, by Plaintiff's race and/or national origin; and

3.    Such harassment was severe or pervasive enough to alter the conditions of Plaintiff's employment for the worse.[14]

Element 1 - The first element requires that Plaintiff establish that he was subjected to unwelcome harassment that was objectively and subjectively hostile. In other words, Plaintiff must prove, by a preponderance of the evidence, that (1) a reasonable person in his position would have perceived the work environment to be hostile, abusive, or offensive; and (2) that Plaintiff himself perceived the work environment to be hostile, abusive, or offensive.[15]

Element 2 – To satisfy the second element of his claim, Plaintiff must have established, by a preponderance of the evidence, that he was harassed, in part, based upon his race and/or national origin. It is important to note that the Plaintiff's status in a protected class based upon his race

---

[14] *Trotta v. Mobil Oil Corp.*, 788 F.Supp. 1336, 1348 (S.D.N.Y. 1992); *Meritor Saving Bank*, at 67; *Pucino v. Verizon Wireless Comm., Inc.*, 618 F.3d 112, 117 (2d Cir. 2011)
[15] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993); *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997)

and/or national origin need not be the *only* factor that motivated the harassment. Further, Plaintiff does not need to produce direct evidence that his race and/or national origin motivated Defendants' conduct. Rather, you may reasonable consider facially neutral incidents in light of the totality of the circumstances to find that Plaintiff's race and/or national origin played a role in motivating Defendants' conduct.[16]

Element 3 – To establish the third element of his claim, Plaintiff must have established, by a preponderance of the evidence, that the alleged harassment was severe OR pervasive, such that it affected a term, condition, or privilege of employment by creating an intimidating or abusive work environment. Whether the harassment affected a term or condition of employment is determined from the totality of the circumstances.[17]

Thus, based on the totality of the circumstances, Plaintiff must have demonstrated, by a preponderance of the evidence, that the workplace was permeated with intimidation, ridicule, or insult that is sufficiently severe or pervasive to alter the conditions of his employment for the worse. The more severe the conduct, the less pervasive it must be for you to find that it affected a term or condition - a single incident, without more, if severe enough, can be sufficient to alter Plaintiff's working environment. Likewise, the more pervasive the conduct, the less severe it must be for you to find that it affected a term or condition of employment.[18] In evaluating the totality of the circumstances, a non-exhaustive list of factors you may consider are the following:

1. the entire physical environment of the Plaintiff's work area;

2. the degree and type of harassment;

3. the reasonable expectations of Plaintiff upon entering the environment;

---

[16] *Alfano v. Costello*, 294 F.3d 378 (2d Cir. 2002)
[17] *Sell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 (2d Cir. 1986); *Meritor Savings Bank FSB*, at 69.
[18] *Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000)

4.  the nature of the unwelcome conduct;

5.  the frequency of the conduct;

6.  the severity of the conduct;

7.  the context in which the alleged harassment occurred;

8.  the effect on Plaintiff's psychological well-being;

9.  how threatening the conduct was; and

10. whether it unreasonably interfered with Plaintiff's work performance.[19]

No single factor is required – you must consider the totality of the circumstances. It is important to remember that the work environment does not need to be deemed "unendurable" or "intolerable" in order to have altered the conditions of Plaintiff's employment.[20] Rather, the standard is lower, and all you must find, by a preponderance of the evidence, is that "the harassment is of such quality or quantity that a reasonable employee would find the conditions of his employment *altered for the worse*."[21] Additionally, the conduct need not seriously affect an employee's psychological well-being or lead the employee to suffer injury in order to meet this standard. Rather, psychological harm is merely one relevant factor that can be taken into account in determining whether the employee actually found the environment abusive.

---

[19] *Employment Litigation: Model Jury Instructions*, Section of Litigation, American Bar Association § 1.04(2)(b)(1994 ed.)(*citing* 29 C.F.R. § 1604.11, *Harris Forklift Sys., Inc.* at 20); *Meritor Savings Bank FSB* at 65.
[20] *Whidbee v. Gazarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)
[21] *Id*.

**REQUEST NO. 11**
**INDIVIDUAL DEFENDANT'S LIABILITY**

Plaintiff is also bringing his discrimination and retaliation claims against both the individual Defendant Mehendra Ramphal pursuant to the State Human Rights Law. It is important to note that an individual cannot be found liable under Title VII. Thus, you may not find that Defendant Ramphal discriminated against Plaintiff or retaliated against Plaintiff under Title VII. Unlike Title VII, however, an individual may be found liable for discrimination and/or retaliation under the State Human Rights Law. Thus, you are permitted to find that Defendant Ramphal discriminated against Plaintiff or retaliated against Plaintiff under the State Human Rights Law.

Under the State Human Rights Laws, it is unlawful for any person to "aid, abet, incite, compel, or coerce the doing of any of the act" forbidden by the statute.[22] Thus, individuals may be liable for discrimination under the State Human Rights Laws if he or she "actually participated" in the conduct giving rise to the discrimination and/or retaliation claim.[23] Moreover, Individuals may be held liable for discrimination and/or retaliation even where they lack decision-making authority.[24]

Here, if you find that, by a preponderance of the evidence, Plaintiff has established that: (i) Defendants discriminated against Plaintiff because of his race and/or national origin AND/OR Defendants retaliated against Plaintiff; *and* (ii) Defendant Ramphal actually participated in the discrimination and/or retaliation, you must find Defendant Ramphal liable for discrimination and/or retaliation. On the other hand, if you find that Defendant Ramphal did not actually

---

[22] *See* N.Y. Exec. Law § 296(6)
[23] *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472 (2d Dep't 1998); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995).
[24] *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 329 (2004); *Dunson v. Tri-Maintenance & Contractors, Inc.*, 171 F.Supp.2d 103, 114 (E.D.N.Y. 2011).

participate in the Defendants' discrimination and/or retaliation against Plaintiff, you should find

Defendant Ramphal not liable.

**REQUEST NO. 12**
**GROUP DECISION MAKING**

The law relating to group decision making states that the discriminatory mind of even just one individual or several individuals in a group of decision makers is sufficient for you to find that the employment decision was tainted with a discriminatory motive, even absent proof that the ultimate decision maker or other individuals in the group acted with a discriminatory motive, so long as the plaintiff proves that the discriminatory individual or individuals played a meaningful role in the decision making process. This is true even where the discriminating individual or individuals do not communicate any discriminatory animus to the other decision makers but nevertheless influence the decision through their recommendation.

Therefore, it is permissible for you in this case to conclude that the employment decisions about which plaintiff complains were tainted with a discriminatory animus even though you have heard evidence that some of those decisions were made by a group of decision makers, some of whom you may find did not act with any discriminatory animus, so long as you find that other individuals in the group held a discriminatory animus and played a meaningful role in the decision making process.

### III.    PLAINTIFF'S RETALIATION CLAIMS

**REQUEST NO. 13**
**INTRODUCTION TO PLAINTIFF'S RETALIATION CLAIMS**

Plaintiff brings his claims of retaliation against the Defendants pursuant to Title VII of the Civil Rights of 1964 (42 U.S.C. § 2000e-2(a)) and the New York State Human Rights Law (N.Y. Exec. Law § 290 et. seq.).

The term "retaliation" can mean many things under the law. In this case, Mr. Lewis claims that the Defendants retaliated against him after his complaints of discrimination by (i) constructively demoting him, (ii) decreasing his compensation, and (iii) providing him less frequent opportunities for overtime work; and (iv) subjecting him to disparate treatment and disparate, or unequal, treatment.

As I just did for Plaintiff's discrimination claims, I will now instruct you on the elements of Plaintiff's retaliation claims under the applicable laws.

**REQUEST NO. 14**
**ELEMENTS OF PLAINTIFF'S RETALIATION CLAIMS UNDER THE STATE**
**HUMAN RIGHTS LAW AND TITLE VII**

In order to prevail on his claims of retaliation under Title VII and the State Human Rights Law, Plaintiff must have proven, by a preponderance of the evidence, that (1) he participated in a protected activity; (2) Defendants had knowledge of the protected activity; (3) Plaintiff suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.[25]

Element One - An employee engages in protected activity when he takes any action to protest or oppose statutorily prohibited discrimination.[26] You may find that Plaintiff engaged in protected activity if he protested discrimination, either informally or formally, including complaints to management.[27]

Here, Plaintiff has asserted that he engaged in protected activity when he made complaints of discrimination to his supervisors, union representatives, and by noting the discrimination provisions of his collective bargaining agreement on his grievances which were received by Defendant ASR's Human Resources personnel. If you find, by a preponderance of the evidence, that such conduct rises to the level of a formal OR informal complaint of discrimination, you must find that Plaintiff has satisfied this element of his retaliation claim.

Element Two – The second element requires that Defendants had knowledge of Plaintiff's complaints of discrimination. An employer has knowledge of a Plaintiff's protected activity when the employer "understood, or could reasonably have understood, that plaintiff's opposition was

---

[25] *Davis v. Metro. Transp. Auth.*, 2012 WL 727696, at *10 (S.D.N.Y. Mar. 6, 2012)
[26] *Knight v. City of N.Y.*, 303 F.Supp.2d 485, 496 (S.D.N.Y. 2004).
[27] *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000); *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012)

directed at" prohibited discrimination.[28] In order to show this, however, Plaintiff is not "required to show that the individual decision-makers had [actual] knowledge of his protected activity., it is sufficient if the corporate entity has been put on notice of plaintiff's complaint" of discrimination.[29]

Thus, if you find that Defendant ASR had knowledge of Plaintiff's complaints of discrimination then both Defendants had knowledge of Plaintiff's complaints of discrimination and you must find in favor of Plaintiff on this element.

Element Three – The third element of Plaintiff's retaliation claim requires a showing that Plaintiff suffered an adverse employment action. I have already instructed you as to the meaning of an adverse employment action in connection with Plaintiff's discrimination claims.

Element Four -  Finally, the last element of Plaintiff's retaliation claim requires a causal connection between Plaintiff's complaints of discrimination and the adverse action or actions he suffered. In order to demonstrate a causal connection, a plaintiff need only show that the protected activity came before the allegedly retaliatory adverse action.[30] There is no specific delay between the protected activity and the alleged adverse action.[31]

---

[28] *Risco v. McHugh*, 868 F.Supp.2d at 113
[29] *Id*.
[30] *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001).
[31] *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306, 314 (2d Cir. 2005).

**IV.    DAMAGES**

**REQUEST NO. 15**
**<u>DAMAGES – INTRODUCTORY REMARKS</u>**

I will now give you the instructions for awarding damages. First, the fact that *I* am instructing you on how to award damages does not mean that I have any opinion on whether or not any of the defendants should be held liable in this case.

If you return a verdict for the plaintiff, then you must consider the issue of damages.  If you return a verdict for the defendants, then you need not consider damages. Only if you decide that plaintiff is entitled to recover will you consider the measure of damages.

## REQUEST NO. 16
## <u>COMPENSATORY DAMAGES</u>

If you return a verdict for the plaintiff, then you must award him such sum of money as you believe will fairly and justly compensate him for any injury you believe he actually sustained as a direct consequence of the conduct of the responsible defendant or defendants.

In order for the plaintiff to prevail on his claims, he must prove:

1. That one or more of the defendants discriminated against him based on his race, in violation of his statutory and/or constitutional rights; and/or

2. that one or more of the defendants retaliated against him based on his protected speech and complaints of discrimination, and

3. the violation of his rights caused him actual, compensable injury.

You should award compensatory damages only for those injuries which you find that plaintiff has proven by a preponderance of the evidence to have been the direct result of conduct of the defendant and or defendants whose conduct violated plaintiff's rights. You may award damages for any emotional distress and out-of-pocket costs that plaintiff experienced as a consequence of defendants' actions. There is no exact standard for fixing the compensation to be awarded for these damages, and in determining the amount of any damages that you decide to award, you should be guided by common sense and the evidence presented to you during these proceedings.

## REQUEST NO. 17
## <u>EMOTIONAL DAMAGES</u>

In addition to financial damages that Plaintiff claims he has suffered, he also claims to have suffered non-pecuniary losses. Non-pecuniary losses are intangible injuries such as emotional pain, suffering, mental anguish, loss of enjoyment of life, loss of health, and injury to character or reputation. Emotional suffering may manifest itself through such things as sleeplessness, anxiety, stress, depression, mental strain, humiliation, loss of self-esteem, excessive fatigue, nervous breakdown, hair loss, ulcers, or headaches. This list of examples of emotional damages is not an exhaustive list, and you may find that other types of symptoms or manifestations also constitute emotional damages[32].

No evidence of the monetary value of such intangible things as a damaged reputation or emotional suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages[33]. The cash value of such damages, should you find plaintiff proved he suffered any, is entirely up to you as a jury to decide.

---

[32] *See* EEOC Enforcement Guidance on Damages under CRA 91, No. 915.002, 7/14/92.
[33] *Id.*

**REQUEST NO. 18**
**<u>NOMINAL DAMAGES</u>**

If you return a verdict for plaintiff, but find he has failed to prove by a preponderance of the evidence that he suffered any actual damages, then you must return an award of damages in some nominal or token amount not to exceed the sum of one dollar.

## REQUEST NO. 19
## PUNITIVE DAMAGES

In addition to awarding damages to compensate the plaintiff for his injuries, you may, but you are not required to, award plaintiff punitive damages if you find that the acts of Defendants were either done maliciously or with a wanton or reckless disregard of the constitutional rights of the plaintiff.

The purpose of punitive damages is to punish the defendant and/or defendants for malicious or wanton and reckless acts and thereby to discourage the defendants and other people from acting in a similar way in the future.

An act is malicious when it is done deliberately with knowledge of the plaintiff's rights and with the intent to interfere with those rights. An act is wanton and reckless when it is done in such a way and under such circumstances as to show conscious indifference and utter disregard of its effect upon plaintiff's rights. If you determine that either defendant or the defendants acted either maliciously or wanton and recklessly, then you may award plaintiff punitive damages.

In arriving at your decision as to the amount of punitive damages you should consider the following factors:

1. The nature and reprehensibility of what defendants did. That would include the character of the wrongdoing. whether the defendants' conduct demonstrated an indifference to, or a reckless disregard, of the plaintiff's rights, how long the conduct went on, the defendants' awareness of what harm the conduct caused or was likely to cause, any concealment or covering up of the wrongdoing, or any evil motive or intent he may have had at the time of the conduct;

2. The actual and potential harm created by defendants' conduct. The amount of punitive damages that you award must be both reasonable and proportionate to the actual and potential harm suffered by the plaintiff, and to the compensatory damages you awarded the plaintiff.

In reporting your verdict, you will state the amount awarded by you as punitive damages.