UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDE N. LEWIS,

                Plaintiff,

      v.

AMERICAN SUGAR REFINING, INC. and
MEHANDRA RAMPHAL,

           Defendants.

Index No. 14-cv-02302 (CRK)
ECF Case

## MEMORANDUM AND ORDER

Plaintiff brought this action against his employer, American Sugar Refining, Inc. ("ASR"),

and his supervisor, Mehandra Ramphal (collectively "Defendants"), alleging race and national

origin discrimination, hostile work environment, and retaliation by Defendants in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the

New York City Human Rights Law.  See Compl., Mar. 27, 2014, ECF No. 2; Am. Compl., Sept.

30, 2014, ECF No. 24 ("Am. Compl.").  Before the court are the parties' respective motions in

limine.  Notice of [Pl.'s] Mot. [In Lim.], Feb. 12, 2018, ECF No. 116; Notice of [Defs.'] Mot. In

Lim., Feb. 12, 2018, ECF No. 115; see Pl. Claude Lewis' Mem. L. Supp. Pl.'s Mot. In Lim., Feb.

12, 2018, ECF No. 117 ("Pl.'s Br."); Defs.' American Sugar Refining, Inc. & Mehandra

Ramphal's Mots. In Lim., Feb. 12, 2018, ECF No. 115-1 ("Defs.' Br.").  Plaintiff seeks to preclude

all evidence of allegations levied against Plaintiff for alleged domestic violence.  Pl.'s Br. at 2–3.

Defendants seek to preclude Plaintiff from: 1) arguing that Article 10 of the Collective Bargaining

Agreement relates to race and/or national origin discrimination, Defs.' Br. at 2–4; 2) offering

testimony of any witness not included in Plaintiff's initial disclosures and discovery responses, id. at 10–14; 3) introducing certain deposition transcripts at trial, id. at 14–19; and 4) making any reference to an unrelated case.  Id. at 19–20.  Defendants also request the court to allow the introduction of evidence of Plaintiff's prior grievances and disciplinary history, to which Plaintiff has objected.  Id. at 5–10; see Proposed Joint Pretrial Order at 28–36, Nov. 7, 2017, ECF No. 94 ("Proposed Pretrial Order"); Pretrial Mem. at 2–3, Jan. 29, 2018, ECF No. 114.  For the reasons that follow, Plaintiff's motion is granted in part and denied in part.  Further, the court reserves judgment on certain aspects of Defendants' motion, and grants and denies in part the rest.

## I.  Plaintiff's Motion in Limine

Plaintiff has moved in limine to preclude Defendants from offering as substantive evidence or referring to domestic violence complaints filed against Plaintiff.  See Pl.'s Br. at 2–3.  Plaintiff argues that these complaints did not result in charges being filed against Plaintiff, and that any reference to these complaints would be unduly prejudicial and would serve no relevant purpose. Id. at 2.  Defendants respond that Plaintiff has put his emotional state at issue in this case by alleging that Defendants' actions caused Plaintiff emotional distress, and by calling Dr. Reah Segal Parson ("Dr. Parson") to provide testimony as to Plaintiff's emotional state.  See Defs.' [ASR] & Mehandra Ramphal's Opp'n to Pl.'s Mot. In Lim. at 4, Mar. 5, 2018, ECF No. 121 ("Defs.' Opp'n Br.").  For the reasons that follow, Plaintiff's motion in limine is granted.

References to allegations of domestic violence against Plaintiff are unfairly prejudicial. Rule 403 of the Federal Rules of Evidence ("FRE") provides that the court, at its discretion, may exclude relevant evidence on the ground that the evidence's proffered probative value is substantially outweighed by danger of unfair prejudice.  See FED. R. EVID. 403.  The likelihood of unfair prejudice here is high.  The jury does not need to hear about unsubstantiated allegations

of domestic violence to be able to determine whether Plaintiff's emotional distress claim manifested for a reason other than work-related incidents; it is sufficient for Defendants to refer to the custody proceedings generally.   Therefore, Defendants may not reference any domestic violence complaints against Plaintiff, nor make reference to violent interactions that may have taken place between Plaintiff and the mother of his child or between Plaintiff and his child.   The excerpts cited by Defendants that discuss Plaintiff's potentiality for or actual manifestations of aggression, physical or otherwise, see, e.g., Defs.' Opp'n Br. at 2 (citing Ex. B [Dr. Parson Dep.] at 42:16–43:3, 59:3–59:20, 141:8–142:9, Mar. 5, 2018, ECF No. 121-3), are prejudicial and Defendants are precluded from raising them at trial.

## II.  Defendants' Motions in Limine

Defendants have moved in limine to preclude Plaintiff from: 1) arguing that Article 10 of the Collective Bargaining Agreement relates to race and/or national origin discrimination, Defs.' Br. at 2–4; 2) offering deposition testimony of any witness not included in Plaintiff's initial disclosures and discovery responses, id. at 10–24; 3) introducing certain deposition transcripts at trial, id. at 14–19; and 4) making any reference to an unrelated, pending case.   Id. at 19–20. Defendants also request the court to allow the introduction of evidence of Plaintiff's prior grievances and disciplinary history, to which Plaintiff has objected.   Id. at 5–10.   Plaintiff opposes each request.   See Pl. Claude Lewis' Mem. L. Opp'n Defs.' Mots. In Lim., Mar. 5, 2018, ECF No. 122 ("Pl.'s Opp'n Br.").   For the reasons that follow, Defendants' motions in limine are granted in part and denied in part.

### A.  Article 10 of the Collective Bargaining Agreement

Defendants have moved in limine to preclude Plaintiff from arguing that Article 10 of the Collective Bargaining Agreement ("CBA") relates to discrimination on the grounds of race and/or

national origin.  Defs.' Br. at 2–4; see JX-7 (2011 Collective Bargaining Agreement) at ASR

000020–21; JX-8 (2005 Collective Bargaining Agreement) at P00021.  Defendants explain that

they intend to present as an affirmative defense Plaintiff's failure to notify his employer, ASR, of

any perceived discrimination or harassment based on race and/or national origin through any of

ASR's reporting channels.[1]  Defs.' Br. at 3.  Defendants contend that, to undercut this defense,

Plaintiff will argue that Article 10 of the CBA, which Lewis cited in grievance notices filed with

the union, covers allegations of perceived race and/or national origin discrimination.  Id.

Defendants argue that Article 10 of the CBA governs only discrimination in union activity, rather

than discrimination on the basis of race and/or national origin.  Id.  Plaintiff responds that Article

10 of the CBA relates to and prohibits all forms of discrimination, including discrimination based

on race and/or national origin.  See Pl.'s Opp'n Br. at 1–2.

Defendants' affirmative defense requires it prove: (1) that the "employer exercised

reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2)

that the "employee unreasonably failed to take advantage of any preventive or corrective

opportunities provided by the employer or to avoid harm otherwise."  Faragher v. City of Boca

Raton, 524 U.S. 775, 777–78 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).  To

prove the first element, "[a]n employer may demonstrate the exercise of reasonable care . . . by

showing the existence of an antiharassment policy during the period of the plaintiff's employment,

---

[1] Defendants assert in their motion in limine that "ASR provided at least four (4) methods for reporting improper conduct, including reporting to 1) the employee's supervisor, or any supervisor the employee feels comfortable with, 2) any HR representative, 3) anyone in the legal department, and 4) Domino Direct." Defs.' Br. at 3.  In their summary judgment motion, Defendants emphasized that ASR provided employees with "five (5) methods for reporting improper conduct, including reporting to 1) the employee's supervisor, or any supervisor the employee feels comfortable with, 2) any HR representative, 3) any union representative, 4) anyone in the legal department, and 5) Domino Direct."  Mem. L. Supp. Defs.' [ASR] & Mehandra Ramphal Mot. Summ. J. Dismissing Pl.'s Am. Compl. at 2–3, Jan. 6, 2017, ECF No. 64-5.  Defendants later added that employees may also contact "[a]ny executive officer at ASR" to report alleged harassment.  Id. at 20.

although that fact alone is not always dispositive." <u>Ferraro v. Kellwood Co.</u>, 440 F.3d 96, 102 (2d Cir. 2006) (citing <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 128 (2d Cir. 2003); <u>Caridad v. Metro–N. Commuter R.R.</u>, 191 F.3d 283, 295 (2d Cir. 1999)); <u>see also</u> <u>Lamarr-Arruz v. CVS Pharmacy, Inc.</u>, 271 F. Supp. 3d 646, 660–62 (S.D.N.Y. 2017).  To prove the second element, "proof that an employee has unreasonably failed to use the employer's complaint procedure normally suffices to satisfy the employer's burden." <u>Ferraro</u>, 440 F.3d at 102 (citing <u>Faragher</u>, 524 U.S. at 807; <u>Ellerth</u>, 524 U.S. at 765).

Here, Defendants and Plaintiff disagree on the scope of Article 10 of the CBA.  <u>Compare</u> Defs.' Br. at 2–4, <u>with</u> Pl.'s Opp'n Br. at 1–2.  Article 10 of the CBA, "Cooperation and Discrimination," states:

> (a) The union hereby pledges itself and its members to discipline all members of the union, and to give their fullest cooperation in advancing the interest of the Company [(ASR)], by advertising through the usual channels that this is a union firm and to use it and its members' good offices on behalf of the Company in every honorable manner.
> The union further agrees that it and its members will exert every effort to cooperate with the Company in attaining and maintaining the highest level of productivity.
>
> (b) There shall be no discrimination by the Company against any member of the union, nor shall the union discriminate against any employee of the Company.

<u>See</u> JX-7 (2011 Collective Bargaining Agreement) at ASR 000020–21; JX-8 (2005 Collective Bargaining Agreement) at P00021.  Because this article does not explicitly limit the types of discrimination it relates to and prohibits, it is a question for the jury whether filing a grievance referencing this provision constituted reasonable notice to the Defendants of the alleged discrimination.  <u>See</u> <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 105 (2d Cir. 2010) (determining that whether a plaintiff has unreasonably failed to take advantage of the options provided in an employer's sexual harassment policy "depends on the facts and circumstances of a

given case and can, as it does here, raise a question for the jury.").  Whether the grievance citing

Article 10 of the CBA constitutes notice is central to determining whether Plaintiff "unreasonably

failed to take advantage of any preventive or corrective opportunities provided by the employer or

to avoid harm otherwise," as is required to establish the affirmative defense.  Faragher, 524 U.S.

at 777–78; Ellerth, 524 U.S. at 765; see Gorzynski, 596 F.3d at 105 (concluding "that the facts and

circumstances of each case must be examined" to determine the reasonableness of the notice

given).  Therefore, Article 10 of the CBA is relevant for the jury's evaluation of whether Plaintiff

provided notice to ASR.  Accordingly, Defendants' motion on this point is denied.

### B.  Evidence of Plaintiff's Prior Grievances and Disciplinary History

Defendants have moved in limine to admit into evidence the grievances Plaintiff filed with

ASR and Plaintiff's disciplinary history with ASR.  See Defs.' Br. at 5–10.  Defendants propose

to use Plaintiff's grievance history to rebut Plaintiff's claim of discrimination by demonstrating

that ASR "properly address[ed] and vett[ed]" the grievances Plaintiff filed, id. at 5, and for

impeachment.[2]  Id. at 6.  Defendants propose to use Plaintiff's disciplinary history as part of their

affirmative defense.  Id. at 7–8.  Plaintiff argues that Defendants' motion presents an overbroad

request, without specificity as to which grievances and notices of disciplinary history the court

---

[2] Defendants identify several sets of grievances filed by Plaintiff and the corresponding ASR responses:
exhibits DX-13 and DX-14 (grievance and grievance denial from February 1991); exhibits DX-15 and DX-
16 (grievance and grievance denial from October/November 1991); exhibits DX-17 and DX-18 (grievance
and grievance denial from March/April 2003); exhibits DX-19, DX-20, and DX-21 (grievance, grievance
denial, and sustainment of grievance denial from March–June of 2003); exhibits DX-22 and DX-23
(grievance and grievance approval from February/March of 2004); exhibits DX-25 and DX-26 (grievance
and grievance denial from August of 2005); exhibits DX-27, DX-28, and DX-29 (grievance, grievance
denial and union appeal of grievance and amendment of decision on grievance December 2005–August
2006); exhibits DX-12 and JX-20 (grievance and memorandum regarding grievance December 2008/May
2009); and exhibits JX-26 and DX-66 (grievance and grievance denial from February/March of 2016).  See
Defs.' Letter at 1–5; see also Proposed Pretrial Order at 20–36 (providing schedules of the parties' exhibits).
In the parties' proposed pretrial order, Plaintiff objects to admission of the defense exhibits on the grounds
of relevance, foundation, and authentication.  See Proposed Pretrial Order at 29–31.

should admit.  See Pl.'s Opp'n Br. at 2–4.  Plaintiff requests that the court deny Defendants' motion

and reserve any rulings on the admissibility until trial.  Id. at 3.  To resolve the issue of admissibility

of this evidence before trial, the court requested Defendants clarify which grievances and

disciplinary notices their motion in limine implicated.  See Letter, Mar. 12, 2018, ECF No. 125.

Defendants responded to the court's letter request.  See [Defs.'] Suppl. Submission Per [Ct. Docket

No. 125] Req. at 1–5, Mar. 15, 2018, ECF No. 127 ("Defs.' Letter").  For the reasons that follow,

the court grants Defendants' motion as to the admissibility of Plaintiff's grievances; denies

Defendants' motion as to the admissibility of all the disciplinary notices issued to Plaintiff; and

reserves judgment until trial as to the admissibility of disciplinary notices that are tied to a

grievance filed by Plaintiff and/or related to Plaintiff being transferred or demoted.

Pursuant to FRE 402, only relevant evidence is admissible.  FED. R. EVID. 402.  Evidence

is relevant "it has any tendency to make a fact more or less probable than it would be without the

evidence . . . and the fact is of consequence in determining the action."  FED. R. EVID. 401.

However, even probative evidence can be excluded if the court, in its discretion determines that

the evidence's probative value "is substantially outweighed by a danger of one or more of the

following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

or needlessly presenting cumulative evidence."  FED. R. EVID. 403; see United States v. Bermudez,

529 F.3d 158, 161 (2d Cir. 2008).  Here, the grievances reproduced in exhibits DX 12–23, DX 25–

29, DX-66, JX-20, and JX-26 are relevant to show how grievances were processed by ASR and

whether ASR was responsive to the grievances Plaintiff filed.[3]   These exhibits are therefore admissible for the purpose proposed by Defendants.[4]

Defendants also argue that "Plaintiff's prior grievances are relevant as impeachment evidence to show that Plaintiff did not believe Article 10 of the CBA related to discrimination based on race and/or national origin."  Defs.' Br. at 6.  Impeachment evidence is "evidence that is offered to discredit a witness . . . to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony[.]"  Friedman v. Rehal, 618 F.3d 142, 153 (2d Cir. 2010).  Defendants argue that they will use Plaintiff's grievance history as impeachment evidence to demonstrate: 1) Plaintiff's "pattern" for reporting grievances included specifically identifying which CBA clause was violated and by what conduct; and 2) that Plaintiff did not rely on CBA Article 10 to report discrimination based on race and/or national origin, but general unfair treatment as a union member.  Defs.' Br. at 6.  Defendants identify five grievances that may be used to support the first contention: DX-17 (grievance filed March 2003), DX-19 (grievance filed March 2003), DX-22 (grievance filed February 2004), DX-24 (grievance filed October 2004), and DX-25 (grievance filed August 2005), and identify one grievance, DX-27 (grievance filed December 2005), to support the second contention.  Id.; see also First Mot. In

---

[3] The court notes that among the listed exhibits are two joint exhibits—JX-20 and JX-26, and one defense exhibit to which Plaintiff did not raise an objection—DX-66.  See Proposed Pretrial Order at 22, 36.  These exhibits will remain on the parties' schedules of exhibits, and are only affected by the court's ruling in this memorandum and order as far as it permits one possible use of these exhibits by Defendants.

[4] Defendants' letter clarified that there are no corresponding responses from ASR regarding grievances reproduced in exhibits JX-12 and JX-13 because the Union Shop Steward rejected these grievances for failure to follow CBA protocol.  Defs.' Letter at 5.  As ASR did not respond to the grievances contained in exhibits JX-12 and JX-13, they do not demonstrate ASR's pattern of responding and reviewing the grievances filed and may not be used by Defendants for this purpose.  However, exhibits JX-12 and JX-13 continue to be accepted as joint exhibits.

Lim. at Attachs. at Nos. 9–13, Feb. 12, 2018, ECF Nos. 115-9–13; id. at Attachs. at No. 7, Feb.

12, 2016, ECF No. 115-7.  Subject to the rules of impeachment, these exhibits are admissible.[5]

   Defendants also seek to use Plaintiff's disciplinary history to demonstrate that Plaintiff was

disciplined for a non-discriminatory reason and that Defendants' reason for disciplining Plaintiff

was not pre-textual.  See Defs.' Br. at 7–10.  Defendants argue that both purposes advance

Defendants' affirmative defenses under the McDonnell Douglas burden shifting framework.[6]  Id.

at 7.  Under the McDonnell Douglas framework, providing a non-discriminatory reason for an

employer's actions constitutes an affirmative defense and shifts the burden of proof back to the

plaintiff to demonstrate that the reason offered is actually pre-textual.  United States v. Brennan,

650 F.3d 65, 93 (2d Cir. 2011).  Plaintiff argues that Defendants fail to identify with particularity

the exhibits they would want to submit to the jury, and instead cite "random examples."  Pl.'s Br.

at 2.  Defendants' supplementary letter submission clarified the exhibits Defendants seek to enter.

See Defs.' Letter at 6–8.

---

[5] Defendants also seek to characterize Plaintiff's submission of grievances such as those contained in exhibits DX-17, DX-19, DX-22, DX-24, DX-25, and DX-27 as habit evidence pursuant to FRE 406.  See Defs.' Br. at 7.  For conduct to constitute habit evidence, "the conduct at issue must constitute a 'regular response to a repeated specific situation.'"  McCarrick v. New York City Off-Track Betting Corp., No. 91 Civ. 5626 (SWK), 1995 WL 261516, at *5 (S.D.N.Y. May 3, 1995) (quoting Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994)).  The Advisory Committee's Notes to FRE 406 provide the following examples of habit evidence: "the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn."  The process of submitting a grievance is not a habit born out of a person's own response but delineated by his or her employer.  Defendants may not, at trial, directly or indirectly argue that Plaintiff had a habit of submitting grievances or that Plaintiff has a litigious nature.

[6] Defendants also argue that Plaintiff's disciplinary history is admissible because Plaintiff put it at issue by claiming that "ASR engaged in a pattern of inappropriately disciplining Plaintiff based on race and/or national origin."  Defs.' Br. at 8.  Plaintiff alleges discriminatory behavior on the part of Ramphal towards him and ASR's dismissal of such behavior beginning in November of 2009.  See Am. Compl. at ¶¶ 23–88, 90–92.  Therefore, disciplinary notices prior to 2009 are not relevant to Plaintiff's claim of discrimination.

Defendants seek to enter into evidence sixteen disciplinary notices.[7]  The disciplinary notices are reproduced in the parties' exhibits and cover incidents between 1988 and 2005 (exhibits DX 4–11, and DX-68); and between 2012 and 2016 (exhibits JX 2–5, JX-14, JX-23, and DX-64). Plaintiff has not objected to exhibit DX-64, see Proposed Pretrial Order at 35, but has objected to exhibits DX 4–11 on the grounds of relevancy, foundation, and authentication.  Id. at 28–29.  At the pretrial conference, Plaintiff's counsel objected to DX-68.  See Oral Arg. [on Parties' Mots. In Lim.] at 02:12:13–02:12:41, Mar. 19, 2018 ("Oral Arg.") (transcript of the oral argument was not yet produced or docketed at the publication of this memorandum and order).  Defendants argue that all 16 disciplinary notices are relevant to show that Plaintiff was disciplined on the quality of his work performance, and not for a discriminatory reason.  See Defs.' Br. at 7–8.

Defendants cite several cases for the proposition that in Title VII actions evidence of prior employment history, even that which predates the statute of limitations on the actionable event, is relevant as background evidence.  See Defs.' Br. at 8–9.  The cases Defendants cite, however, are not comparable to the facts of the present action.  In Malarkey v. Texaco, the court determined that ten years of plaintiff's prior employment history was "arguably relevant" to her Title VII claim alleging retaliation and failure to promote where the past employment history demonstrated plaintiff's professional successes and past promotions.  See Malarkey v. Texaco, 983 F.2d 1204, 1210 (2d Cir. 1993).  In Martin v. Reno, the court determined that an incident that occurred two years prior to the actionable event provided necessary context for plaintiff's claim that he was

---

[7] The schedules of exhibits in the parties' proposed pretrial order contain only 15 exhibits reproducing Plaintiff's disciplinary notices.  In their letter response to the court's request for clarification, Defendants explained that an August 19, 1997 disciplinary letter "was unintentionally omitted from the prior Exhibit List, but [of which] Plaintiff was on notice . . . because it was produced in discovery and Plaintiff stipulated to it as a fact[.]"  Defs.' Letter at 8 (citing Proposed Pretrial Order at 6–7).  Defendants offered the August 19, 1997 disciplinary notice as exhibit DX-67.  See id.  However, at the pretrial conference, the August 19, 1997 disciplinary notice was renumbered and offered as defense exhibit DX-68.  See Oral Arg. at 02:11:44–02:11:48.

constructively discharged.  See Martin v. Reno, No. 96 CIV. 7646 (NRB), 2000 WL 1863765, at

*2–3 (S.D.N.Y. Dec. 19, 2000).  In both cases the employment history was closer in time to the

allegedly discriminatory event and would have helped the jury understand the employer's actions.

Here, Plaintiff alleges that Mehandra Ramphal ("Ramphal") denied him overtime

opportunities for discriminatory reasons and that as a result of Ramphal's treatment and ASR's

poor handling of the situation, Plaintiff was forced to bid-out into a lower paying position,

constituting a constructive demotion.  See Am. Compl. at ¶¶ 23–88, 90–96, 101.  The disciplinary

notices Defendants seek to admit cover two periods: 1988 to 2005, and 2012 to 2016.  Defendants

have not explained how disciplinary notices issued between 1988 and 2005 are relevant to

Plaintiff's allegations.  Plaintiff's past disciplinary history with ASR does not explain nor provide

a rationale for the discriminatory treatment that Plaintiff has alleged.  Defendants have not

demonstrated the relevance of admitting disciplinary notices that did not prompt Plaintiff to file a

grievance and/or related to Plaintiff being transferred or demoted.  Therefore, Defendants' motion

to admit disciplinary notices from 1988 until 2005 is denied.[8]  As for the disciplinary notices issued

to Plaintiff between 2012 and 2016, they are reproduced in either a joint exhibit,[9] see Proposed

Pretrial Order at 20–22, or in a defense exhibit not objected to by Plaintiff.[10]  See id. at 35.  The

court, therefore, reserves judgment on use of these exhibits at trial pending a showing of relevance.

---

[8] Consistent with the court's ruling, the disciplinary notices reproduced in the following exhibits are
inadmissible—DX-4, DX-5, DX-7, DX-8, DX-9, DX-10, and DX-68.  However, the court has identified
DX-6 and DX-11 as exhibits reproducing disciplinary notices that seem to correspond to grievances
Plaintiff filed.  Disciplinary notices that correspond with grievances Plaintiff filed are relevant and,
therefore, may be relied upon by Defendants.

[9] The disciplinary notices reproduced as joint exhibits are JX-2, JX-3, JX-4, JX-5, JX-14, and JX-23.  See
Proposed Pretrial Order at 20–22.

[10] The disciplinary notice that is reproduced as a defense exhibit and to which Plaintiff did not object is
DX-64.  See Proposed Pretrial Order at 35.

### C. Testimony of Witnesses Not Included in Plaintiff's Initial Disclosures and Discovery Responses

Defendants have moved in limine to exclude from Plaintiff's case in chief the testimony of witnesses Fred Pannicia ("Pannicia'),[11] Robert (Bob) Jandovitz ("Jandovitz"), and Adolph McBean ("McBean"), who Defendants argue were not disclosed prior to the filing of the parties' proposed pretrial order. See Defs.' Br. at 10–14; see also Proposed Pretrial Order at 37. Plaintiff argues that exclusion would be an improper remedy because all three witnesses were known to Defendants as persons with knowledge related to the present action and were referred to several times throughout discovery.[12] See Pl.'s Opp'n Br. at 4–7. As a result, Plaintiff contends that

---

[11] The court notes that in their submissions Plaintiff and Defendants provide alternate spellings for Fred Pannicia's last name. Compare Defs.' Br. at 10 ("Pannicia"), with Pl.'s Opp'n Br. at 4 ("Paniccia"). The court will use Defendants' spelling because that is the spelling utilized most consistently in the parties' proposed pretrial order. See generally Proposed Pretrial Order.

[12] Plaintiff does not argue that Jandovitz, McBean, or Pannicia were disclosed, as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), in its response to Defendants' motion in limine. However, at oral argument Plaintiff's counsel did argue that Jandovitz and McBean were both disclosed because Plaintiff incorporated into its "Rule 26 disclosure . . . any witnesses set forth in Defendants' initial disclosure, including the Defendants, and any individual set forth in the Plaintiff's complaint[.]" Oral Arg. at 00:37:40–00:37:51. In supplemental filings to this court following oral argument, Plaintiff reargues its submission that it disclosed Jandovitz because Plaintiff's May 5, 2015 FRCP 26(a)(1) initial disclosures incorporated, by reference, individuals disclosed in Defendants' initial disclosures. See Pl.'s Letter Suppl. Oral Arg. on Mot. In Lim. [Regarding FRCP 26 disclosures] at 1, Mar. 20, 2018, ECF No. 133 ("Pl.'s FRCP 26 Suppl. Letter"); Pl.'s Letter Reply at 2, Mar. 21, 2018, ECF No. 135 ("Pl.'s Reply"); see also Pl.'s FRCP 26 Suppl. Letter at Ex. B (reproducing Defendants' FRCP 26(a)(1) initial disclosures, dated May 5, 2015). In their initial disclosures, Defendants list Jandovitz, but not McBean, as an individual likely to have discoverable information. See Pl.'s FRCP 26 Suppl. Letter at Ex. B (listing "Bob Jandovitz" on page 2).

In response to Plaintiff's arguments at oral argument and Plaintiff's subsequent submission to the court, Defendants also submitted supplemental filings on the admissibility of Jandovitz and McBean. See Defs.' Letter in Resp. to Pl.'s [FRCP 26 Suppl. Letter], Mar. 20, 2018, ECF No. 131 ("Defs.' FRCP 26 Suppl. Letter"); Defs.' Letter [Regarding FRCP 26 Correspondence], Mar. 20, 2018, ECF No. 134 (Defs.'s Letter Regarding Correspondence"). Defendants' submissions include communications between the parties' counsel following the parties' exchange of their respective initial disclosures and Plaintiff's response to Defendants' interrogatories. See generally Exhs. to Defs.' Letter Regarding Correspondence, Mar. 20, 2018, ECF No. 134-1 ("Defs.' Correspondence Exhs."). As a result of these communications, Plaintiff made two amendments to its responses to Defendants' interrogatories. These amendments are relevant because, with both supplemental interrogatories, Plaintiff was responding to Defendants' request

(footnote continued)

Defendants will not be harmed by allowing the witnesses' testimony. See Pl.'s Opp'n Br. at 4.
For the reasons that follow, because Plaintiff has not demonstrated why its failure to disclose
Pannicia, Jandovitz, and McBean is either harmless or is substantially justified, the court grants
Defendants' motion in limine to preclude the testimonies of Pannicia, Jandovitz, and McBean
during Plaintiff's case in chief.

Pursuant to Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure ("FRCP") a party
must include in its initial disclosures the name and contact information "of each individual likely

---

for clarity in identifying potential fact witnesses. First, Defendants point the court to the August 4, 2015
letter sent to Plaintiff's counsel. See Defs.' Correspondence Exhs. at Ex. A. This letter specifically requests
that if Plaintiff intends, as per its July 10, 2015 response to Defendants' interrogatories, see DX-32, to call
everyone mentioned in the complaint as fact witnesses, then Plaintiff should list these individuals. See
Defs.' Correspondence Exhs. at Ex. A. Plaintiff's counsel complied and on August 27, 2015 amended its
initial interrogatory response by specifying nine individuals who may serve as fact witnesses. See Defs.'
Correspondence Exhs. at Ex. B at 3–4. The list Plaintiff produced included individuals who Defendants
listed in their initial disclosures. Compare id., with Pl.'s FRCP 26 Letter at Ex. B at 2–3. Therefore,
Defendants could have reasonably relied on Plaintiff's August 27, 2015 amendments as identifying all
individuals Plaintiff may call at trial. Furthermore, if Plaintiff believed that its first interrogatory response
was complete or clear, it would have held firm and indicated that position. Subsequently, on March 2,
2016, Defendants' counsel requested another clarification regarding Plaintiff's list. See Defs.'
Correspondence Exhs. at Ex. C. Plaintiff's counsel sent an email confirming a change to its list of possible
trial witnesses, see DX-34, and on March 14, 2016, amended its response to Defendants' interrogatories by
withdrawing one witness' name. See DX-33 (reflecting the removal of witness Mayo-Coleman from the
list). In neither amendment did Plaintiff include Jandovitz or McBean as a fact witness it may call at trial.

At oral argument, Plaintiff's counsel raised two counter-arguments regarding the value of the
communications exchanged by the parties' counsel. First, Plaintiff's counsel argued that the email it sent
confirming that witness Mayo-Coleman would not be called at trial was a response to Defendants' request
for clarification only as to the status of Mayo Coleman as a witness and demonstrates only that counsels
agreed to not call Mayo-Coleman at trial. See Oral. Arg. at 00:41:23–00:41:54; DX-34. Second, Plaintiff's
counsel argued that the email it sent "does not say . . . that we have given them [i.e., the Defendants] a
statement that we are not going to call them [referring to Jandovitz and McBean] and that they [i.e.,
Defendants somehow] relied on that statement." Oral. Arg. at 00:37:21–00:37:29. Further, in its
supplementary submissions, Plaintiff argues that "a party's Rule 26 automatic disclosures do not become
obsolete after a party serves responses to a separate and independent discovery demand." Pl.'s Letter Reply
at 2. Here, however, Plaintiff did not disclose Jandovitz or McBean by name in its FRCP 26(a)(1) initial
disclosures. Then, in August of 2015, Plaintiff amended its initial disclosures and named witnesses in
response to Defendants' demand for specificity. See Defs.' Correspondence Exhs. at Ex. B. At that time,
Plaintiff did not renew its reservation to call individuals disclosed by Defendants in its initial disclosures
or individuals mentioned in Plaintiff's amended complaint. Furthermore, the last amended version of the
interrogatory responses that Plaintiff sent Defendants continued to not list Jandovitz or McBean. See DX-
33. Therefore, the court cannot find that Plaintiff actually disclosed either Jandovitz or McBean.

to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" FED. R. CIV. P. 26(a)(1)(A)(i).  A failure to disclose pursuant to FRCP 26(a) may lead to sanctions in the form of preclusion of the undisclosed document or testimony.  FED. R. CIV. P. 37(c)(1).  The court first decides whether a party failed to adhere to a FRCP 26 disclosure requirement and then the court determines if, pursuant to FRCP 37(c)(1), suppression of the disputed item/person is warranted.  See FED. R. CIV. P. 26; FED. R. CIV. P. 37(c)(1).  Suppression may not be warranted if the failure was substantially justified or the result of harmless error.  FED. R. CIV. P. 37(c)(1).  The party seeking preclusion "has the burden of establishing that the opposing party's conduct violated one of [the initial disclosure] rules."  Ward v. Nat'l Geographic Soc'y, No. 99 Civ. 12385 (LAK), 2002 WL 27777, at *1 (S.D.N.Y. Jan. 11, 2002).

In evaluating what the appropriate sanction should be, district courts in this jurisdiction consider: "'1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the [new evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'" Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (citation omitted); see, e.g., Downey v. Adloox Inc., No. 16-CV-1689 (JMF), 2018 WL 794592, at *1 (S.D.N.Y. Feb. 8, 2018); Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., 301 F.R.D. 31, 36 (S.D.N.Y.), objections overruled, 301 F.R.D. 47 (S.D.N.Y. 2014); Max Impact, LLC v. Sherwood Grp., Inc., No. 09 Civ. 902 (JGK) (HBP), 2014 WL 902649, at *7 (S.D.N.Y. Mar. 7, 2014); L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02 Civ. 9144 (PAC), 2006 WL 988143, at *4 (S.D.N.Y. Apr. 13, 2006).  Courts have also found preclusion warranted to discourage "gamesmanship" and encourage full

compliance with the initial disclosure requirements.  See CSC Holdings, Inc. v. Berube, No. 01-1650 (DRH) (MLO), 2004 WL 3541331, at *3 (E.D.N.Y. July 7, 2004).

The parties' joint discovery plan was accepted by the court in April of 2015.  See Initial Case Mgmt. & Scheduling Order, Apr. 20, 2015, ECF No. 41.  Then, in April of 2016, the court ordered "that all discovery, of whatever nature, shall be initiated so as to be completed on or before October 27, 2016."  Order, Apr. 28, 2016, ECF No. 61.[13]  The parties submitted their proposed pretrial order in November of 2017.  See Proposed Pretrial Order.  Shortly thereafter, the court approved a schedule setting the dates for parties to file their respective motions in limine and associated responses, the pretrial conference, and trial for the weeks of March 12, 2018 and March 19, 2018.  See Order [Endorsing Parties' Agreed Upon Proposed Schedule], Nov. 13, 2017, ECF No. 103.  In the parties' proposed pretrial order, Plaintiff disclosed its intent to call witnesses Pannicia, Jandovitz, and McBean in its case in chief.  See Proposed Pretrial Order at 36.  The trial in this action is presently scheduled to commence on April 18, 2018.  See Letter [Advising Parties on Date Change], Mar. 21, 2018, ECF No. 136 ("Trial Schedule Letter").

Plaintiff argues that nondisclosure of Jandovitz, McBean, and Pannicia until the filing of the parties' proposed pretrial order was harmless.  See Pl.'s Opp'n Br. at 4–7.  Plaintiff argues that Defendants were not harmed because Defendants had notice of Plaintiff's intent to call Jandovitz "since as early as July of 2015[,]" and knew that Jandovitz had knowledge of the claims at issue in this action.  See id. at 5.  Plaintiff also argues that communications between the parties' counsel attempting to schedule a time and date to depose Jandovitz and Plaintiff subpoenaing Jandovitz served as further notice.  Id.; see also Ex. 2 [Attached to Decl. of Gabrielle M. Vinci in Opp'n

---

[13] The court notes that Defendants were given leave to take the deposition of Rhea Segal Parson after the October 27, 2016 deadline, due to the late disclosure of that witness.  See Order Granting [Defs.'] Letter Mot. at 1, Nov. 16, 2016, ECF No. 63.

Defs.' Mot. In Lim.], Mar. 5, 2018, ECF No. 123-2 ("Notice of Subpoena"); Ex. 3 [Attached to Decl. of Gabrielle M. Vinci in Opp'n Defs.' Mot. In Lim.], Mar. 5, 2018, ECF No. 123-3 ("Correspondence Regarding Jandovitz Dep.").  As to McBean, Plaintiff argues that Defendants should have been prepared to meet his testimony because McBean was referenced several times in Plaintiff's amended complaint, was referred to by other witnesses' in their depositions, and as Plaintiff's union representative McBean was aware of the grievances underlying the legal issues of this case.  See Pl.'s Opp'n Br. at 5–6.  Finally, as to Pannicia, Plaintiff argues that its failure to disclose Pannicia was harmless because Defendants had four months to prepare for his testimony. Id. at 6.

Plaintiff's explanation for nondisclosure is insufficient.  Plaintiff knew Jandovitz as an ASR employee with some familiarity with the allegations made by Plaintiff in the present action, Plaintiff had the opportunity to depose Jandovitz, but did not, and Plaintiff did not convey an intent to call Jandovitz so Defendants could have deposed him.  Cf. Chen-Oster v. Goldman, Sachs & Co., 114 F. Supp. 3d 110, 129–30 (S.D.N.Y. 2015) (discussing how it would not be possible for a corporation to list all of its employees and noted that plaintiffs could have deposed the challenged witnesses, but "eschewed that opportunity").  In fact, although the parties' counsel had several conversations about deposing Jandovitz in late 2015 and early 2016, see, e.g., Correspondence Regarding Jandovitz Dep. at emails time stamped Monday, Dec. 14, 2015 1:38 PM; Thursday, Jan. 07, 2016 12:13 PM; Monday, Mar. 14, 2016 11:21 AM; Apr. 12, 2016 3:43 PM, and Plaintiff's counsel sent a subpoena calling for Jandovitz's deposition, see Notice of Subpoena, Plaintiff's counsel never proceeded with the deposition.[14]  Furthermore, while the parties were engaging in

---

[14] The cover page to the subpoena sent by Plaintiff's counsel to Defendants' counsel indicates that it was dated April 12, 2016.  See Notice of Subpoena.  However, the actual subpoena is not dated and does not attach a signed proof of service page.

these informal communications, on March 14, 2016, Plaintiff's counsel amended its responses to Defendants' first set of interrogatories for the second time and identified eight individuals who it foresaw calling as fact witnesses.  See DX-33 (Plaintiff's Supplemental Responses to Defendants' First Set of Interrogatories).    Plaintiff did not identify Jandovitz as one such witness. Cumulatively, these events show that Plaintiff did not intend to call Jandovitz or, even if Plaintiff did, it never made that intention clear.

Further, Plaintiff has not explained how references to McBean solely by his job title, and not by his name, in the amended complaint and various discovery documents put Defendants on notice of Plaintiff's intent to call McBean as a witness at trial.  It is possible that McBean was referenced to provide context, or to explain the employee dynamics within ASR.  Further, similarly to Plaintiff's omission of Jandovitz, Plaintiff's counsel did not disclose McBean as a fact witness in its first and second amended response to Defendants' first set of interrogatories, even after being asked to specifically identify fact witnesses by Defendants' counsel.  See Exhs. to Defs.' Letter Regarding Correspondence at Ex. A, Mar. 20, 2018, ECF No. 134-1 ("Defs.' Correspondence Exhs.") (reproducing the August 4, 2015 email sent by Defendants' counsel); id. at Ex. B (reproducing Plaintiff's amended response to Defendants' interrogatories, dated August 27, 2015); id. at Ex. C (reproducing the March 2, 2016 email sent by Defendants' counsel); DX-33 (reproducing Plaintiff's amended response to Defendants' interrogatories, dated March 14, 2016). As to Pannicia, Plaintiff fails explain how its failure to disclose Pannicia is harmless, except to argue that at the time of disclosure, trial was still four months away.  Pl.'s Opp'n Br. at 6. Plaintiff's explanation is insufficient.  Further, Plaintiff may call other witnesses to discuss the approach that ASR's human resource team took in reviewing grievances and issuing disciplinary

notices.  For example, Deborah Lafaro ("Lafaro") is included on Plaintiff's witness list.[15]  See Proposed Pretrial Order at 36.  According to Plaintiff, Lafaro is or was employed by ASR as a "Human Resources Representative," see Am. Compl. at ¶ 61, and testified to the associations between Plaintiff and McBean and Plaintiff and Jandovitz in her deposition.  See Pl.'s Opp'n Br. at 6.  Therefore, counsel for Plaintiff can elicit such testimony at trial.  Finally, reopening discovery would not be feasible given that the trial date for this action has been scheduled for April of 2018 and the present action has been pending since 2014.  See Trial Schedule Letter; Compl.

Plaintiff contends that district courts in this circuit have allowed previously undisclosed witnesses to testify because the effects of nondisclosure were harmless.  See Pl.'s Opp'n Br. at 6; see, e.g., Barcroft Media, Ltd. v. Coed Media Grp., LLC, No. 16-CV-7634 (JMF), 2017 WL 4334138 (S.D.N.Y. Sept. 28, 2017); EMI Music Mktg. v. Avatar Records, Inc., 334 F. Supp. 2d 442 (S.D.N.Y. 2004).  Here, however, there is harm.  In response to Defendants' first set of interrogatories seeking the names of any fact witnesses Plaintiff planned to call at trial, Plaintiff indicated that its intent was to call all of the employees referenced in its amended complaint, as well as all of the employees who worked the shifts referenced by Plaintiff in its amended complaint, as witnesses.  See PX-27 (Plaintiff's response is reproduced on page four of the exhibit).  On August 4, 2015, Defendants' counsel specifically objected to Plaintiff's answer as deficient and sought the specific names of the individuals Plaintiff intended to call as fact witnesses.  See Defs.' Correspondence Exhs. at Ex. A.  Plaintiff's counsel complied and on August 27, 2015 amended its initial interrogatory response by specifying nine individuals who may serve as fact witnesses.  See id. at Ex. B at 3–5.  Plaintiff did not include Pannicia, Jandovitz, or McBean

---

[15] The court notes that in the parties' proposed pretrial order, Deborah Lafaro is also referred to as "Debbie Troche."  See, e.g., Proposed Pretrial Order at 14, 37.

amongst the fact witnesses listed.  Plaintiff's counsel further amended its interrogatory responses

in March of 2016, see DX-33, likewise in response to a direct inquiry from Defendants' counsel

seeking clarification as to witnesses to be called at trial.  See Defs.' Correspondence Exhs. at Ex.

C.  Plaintiff's amended interrogatory listed the witnesses it would call and did not list Pannicia,

Jandovitz, or McBean.  See DX-33 at 3–5.  However, in the months prior to amending its

interrogatory responses, Plaintiff's counsel exchanged email communications with Defendants'

counsel about Jandovitz.  See, e.g., Correspondence Regarding Jandovitz Dep. at emails time

stamped Monday, Dec. 14, 2015 1:38 PM; Thursday, Jan. 07, 2016 12:13 PM.  One such email

was exchanged on the same day Plaintiff amended its interrogatory responses for a second time,

and after Defendants' March 2, 2016 request for specificity.  See Correspondence Regarding

Jandovitz Dep. at emails time stamped Monday, Mar. 14, 2016 11:21 AM; see also Defs.'

Correspondence Exhs. at Ex. C.  In light of Plaintiff's initial disclosures, Defendants' multiple

requests for specificity, and Plaintiff's responses, Defendants made a reasonable strategic decision

not to depose Pannicia, Jandovitz, or McBean based on Plaintiff's responses to Defendants'

counsel's specific requests for clarification as to who Plaintiff may call as a fact witness at trial.

Defendants may not now depose Pannicia, Jandovitz, or McBean and therefore Defendants will be

harmed if these individuals are allowed to be called by Plaintiff in its case in chief.  Therefore,

Plaintiff is precluded from calling Jandovitz, McBean, or Pannicia as witnesses in its case in chief.

### D. Deposition Transcripts of Plaintiff, Adolf McBean, Robert Jandovitz, Mehandra Ramphal, Deborah Lafaro, and Elizabeth Mendonca

Defendants have moved in limine to preclude Plaintiff from introducing the deposition

transcripts of six individuals at trial.  See Defs.' Br. at 14–19.  Specifically, Defendants seek to

preclude the introduction of "(1) Plaintiff's own deposition transcript; (2) deposition transcripts of

Adolf McBean and Robert Jandovitz from a different, unrelated case; and (3) deposition transcripts

of Mehandra Ramphal, Deborah Lafaro, and Elizabeth Mendonca [("Mendonca")] without specifying the relevant portions." Id. at 14.  Plaintiff argues that use of a witness-declarant's prior testimony is allowed under the Federal Rules of Evidence and that preemptive demarcation of deposition testimony for use to impeach or refresh a witness' recollection is not possible and is illogical.  See Pl.'s Opp'n Br. at 7–8.

Defendants' in limine challenge seeks a broad ruling foreclosing Plaintiff's use of deposition testimony at trial.  However, in the parties' proposed pretrial order, Plaintiff specifically states that "unless a witness becomes unavailable for trial," he intends to use deposition testimony for the "limited purposes" of "impeaching a witness or refreshing a witness' recollection." Proposed Pretrial Order at 36.  It will not be until trial that the court will hear the testimony of each individual witness and, therefore, be able to evaluate whether counsel is following proper impeachment proceedings in light of that witness' testimony.  Similarly, whether a witness' recollection needs to be refreshed is dependent on the circumstances, and is subject to counsel laying the proper foundation, the witness acknowledging a memory failure, and other factors, none of which will be known until the situation arises at trial.  Therefore, the court reserves judgment until trial on whether Plaintiff may use, on cross-examination, the deposition transcripts of Jandovitz and McBean taken in a different action.  The court likewise reserves judgment until trial on whether Plaintiff may rely on his own deposition transcript to refresh his own recollection.  In so far as Defendants' motion seeks to preclude Plaintiff from introducing his own deposition in his case in chief, unless Plaintiff becomes unavailable, it is granted.  Further, Plaintiff is precluded from introducing the deposition transcripts of Jandovitz and McBean taken in a different action in its case in chief.

Defendants also argue that Plaintiff should be foreclosed from relying on deposition testimony of Ramphal, Lafaro and Mendonca because Plaintiff failed to indicate the specific transcript page and line ranges it will offer at trial.  <u>See</u> Defs.' Br. at 19.  In so far as Defendants' motion seeks to preclude Plaintiff from introducing these deposition transcripts during its case in chief, unless these witnesses become unavailable, Defendants' motion is granted.  However, for the same reasons outlined above, the court reserves judgment until trial on Plaintiff's reliance on these deposition transcripts during cross-examination or for the purposes of refreshing a witness' recollection.

### E.  References to An Unrelated Case

Defendants have moved <u>in limine</u> to preclude Plaintiff from making any reference to the recently adjudicated action of <u>Rosanna Mayo-Coleman v. American Sugars Holdings, Inc.</u>, Civil Action No. 14-cv-0079 ("Mayo-Coleman Action").  <u>See</u> Defs.' Br. at 19–20.  The parties briefed this issue in filings related to Defendants' motion <u>in limine</u>; however, at oral argument in response to the court's inquiry regarding the potential prejudice to the Defendants and the grounds for referencing the other case, Plaintiff's counsel requested an opportunity to submit supplemental briefing on this issue.  The court granted the request and allowed Defendants to file a response to Plaintiff's supplemental submission.  Letter [Memorializing Ct.'s Outstanding Reqs. Following Pretrial Conference] at 2, Mar. 19, 2018, ECF No. 130.  However, by letter to the court, Plaintiff's counsel stated that, "[u]nless the door is opened by defendants, Plaintiff does not intend to introduce any evidence etc. regarding the Mayo-Coleman matter, except for the use of sworn testimony therein for impeachment and examination purposes."  Letter [Responding to Two of the Ct.'s Inquiries], Mar. 23, 2018, ECF No. 140.  Accordingly, Plaintiff is precluded from referencing the Mayo-Coleman Action in its case in chief.  However, the court reserves judgment until trial of

whether Plaintiff's reliance on materials associated with the Mayo-Coleman Action are relevant and may be used by Plaintiff's counsel for impeachment or cross-examination purposes.

## **CONCLUSION**

In accordance with the foregoing, the court reserves judgment, until trial, on Defendants' motions <u>in limine</u> seeking an order: to enter into evidence the disciplinary notices issued to Plaintiff between 2012 and 2016; on the admissibility of disciplinary notices that are tied to a grievance filed by Plaintiff and/or related to Plaintiff being transferred or demoted; precluding use, by Plaintiff, of deposition transcripts of Jandovitz, McBean, and Plaintiff for the purposes of impeachment or refreshing the witness' recollection; and precluding reliance, by Plaintiff, on materials associated with the Mayo-Coleman Action for the purposes of impeachment or cross-examination.  Further, it is

**ORDERED** that Plaintiff's motion <u>in limine</u> to preclude Defendants from making reference to the alleged domestic violence allegations against Plaintiff is granted; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to preclude Plaintiff from arguing that Article 10 of the CBA relates to race and/or national original is denied; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to introduce Plaintiff's grievance history is granted; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to introduce Plaintiff's disciplinary history is denied; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to preclude Plaintiff from offering testimony, in its case in chief, of Pannicia, Jandovitz, and McBean is granted; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to preclude Plaintiff from introducing into evidence his own deposition, unless Plaintiff becomes unavailable, and the depositions of Ramphal, Lafaro, and Mendonca, unless they become unavailable, is granted; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to preclude Plaintiff from introducing into evidence, in its case in chief, the deposition transcripts of Jandovitz and McBean taken in a different action is granted; and it is further

**ORDERED** that Defendants' motion <u>in limine</u> to preclude Plaintiff from making any reference to the recently adjudicated action of <u>Rosanna Mayo-Coleman v. American Sugars Holdings, Inc.</u>, Civil Action No. 14-cv-0079, in its case in chief, is granted.

<u>/s/ Claire R. Kelly</u>
Claire R. Kelly, Judge

Dated: March 26, 2018
      New York, New York